UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOHN DOE,

                                                   Civil Action No:

                    Plaintiff,

      -against-


MANHATTAN COLLEGE,

                    Defendant.
-------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUCTION


NESENOFF & MILTENBERG, LLP
*Attorneys for Plaintiff*

Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Kristen Mohr, Esq.
Helen Setton, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 4

   I.     THE REQUESTED TRO AND PI IS PROPER UNDER THE LAW .............................. 4

   II.   LEGAL STANDARD ........................................................................................ 7

   III.   PLAINTIFF WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF AN
INJUNCTION ................................................................................................................... 7

   IV.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS (OR
SHOWS SERIOUS MERITS QUESTIONS AND HARDSHIP) ........................................... 10

      1.   Title IX ............................................................................................... 11

      2.   Breach of Contract ............................................................................. 16

   V.   THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFF'S FAVOR ..... 20

   VI.   THE REQUESTED INJUNCTION IS IN THE PUBLIC INTEREST. ........................ 23

CONCLUSION ................................................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985) ..................................................... 12

*Asa v. Pictometry Int'l Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y. 2010) ................................... 7

*Babiker v. Ross Univ. Sch. of Med.*, 98-CIV-1429 (THK), 2000 WL 666342, at *6 (S.D.N.Y.

    May 19, 2000), *aff'd*, 86 Fed. Appx. 457 (2d Cir. 2004) .......................................................... 20

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F. 3d 887, 895 (2d Cir. 2015) ............................ 6

*Clogher v. New York Med. Coll.*, 976 N.Y.S.2d 198, 199 (App. Div. 2013) ......................... 18, 19

*Coleman v. Newburgh Enlarged City School Dist.*, 319 F. Supp. 2d 446, 453 (S.D.N.Y. 2004) . 11

*Collick v. William Paterson Univ.,* 16-471 (KM) (JBC), 2016 WL 6824374 at *16 (D.N.J. Nov.

    17, 2016) ................................................................................................................................ 17, 19

*Doe v. Amherst Coll.*, 238 F.Supp.3d 195, 223 (D. Mass. 2017) ................................................. 17

*Doe v. Brown Univ.,* 210 F. Supp. 3d 310, 313 (D.R.I. 2016) ........................................................ 8

*Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016) ................................................... 14, 15, 17

*Doe v. Lynn Univ., Inc.*, 235 F.Supp.3d 1336, 1340–42 (S.D. Fla. 2017) .................................... 17

*Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018) .................................... 13, 14

*Doe v. Middlebury College,* No. 1:15-cv-192-jgm, 2015 WL 5488109, 2015 U.S. Dist. LEXIS

    124540 (D.Vt. Sep. 16, 2015) ................................................................................. 7, 10, 23, 25

*Doe v. Pennsylvania State Univ*., 276 F. Supp. 3d 300, 302 (M.D. Pa. 2017) .............................. 8

*Doe v. Rensselaer Polytechnic Inst.,* No. 1:20-CV-1185, 2020 WL 5775193, at *2 (N.D.N.Y.

    Sept. 28, 2020) ........................................................................................................................... 6

*Doe v. Rensselaer Polytechnic Inst.*, No. 18-CV-1374(FJS)(CFH), 2019 WL 181280, at *2

    (N.D.N.Y. Jan. 11, 2019) ........................................................................................................... 9

*Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205, 1210–11 (M.D. Fla. 2019) ...................................... 17

*Doe v. Texas Christian Univ.*, No. 4:22-CV-00297-O, 2022 WL 1573074 (N.D. Tex. April 29, 2022)..................................................................................................................................... 8

*Doe v. Univ. of Notre Dame*, No. 17-CV-298, 2017 WL 1836939, 2017 U.S. Dist. LEXIS 69645 (N.D. Ind. May 8, 2017)................................................................................. 7, 10, 23, 24

*Doe v. University of Cincinnati,* 223 F. Supp.3d 704 (S.D. Ohio 2016) ...................................... 8

*Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988) ............................................................................ 12

*Floyd v. City of New York*, 959 F. Supp. 2d 668, 673 (S.D.N.Y. 2013)...................................... 24

*Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) .......................................... 19

*General Mills, Inc. v. Chobani, LLC*, 158 F. Supp. 3d 106, 114-115 (N.D.N.Y. 2016)................ 6

In *Doe v. University of Connecticut*, No. 3:20-cv-00092 (D. Conn. Jan. 23, 2020)..... 7, 10, 23, 25

*Johnson v. Schmitz*, 119 F. Supp.2d 90, 93 (D. Conn. 2000) ...................................................... 18

*King v. DePauw Univ.*, No. 2:14-cv-70, 2014 WL 4197507, 2014 U.S. Dist. LEXIS 117075 (S.D. Ind. Aug. 22, 2014)................................................................................. 8, 11, 23

*LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 56 (2d Cir. 2004) ............................... 9

*LaRouche v. Kezer*, 20 F. 3d 68, 74 (2d Cir. 1994) ..................................................................... 7

*Maczaczyj v. State of N.Y.*, 956 F. Supp. 403, 408 (W.D. N.Y. 1997)......................................... 11

*Menaker v. Hofstra Univ.,* 935 F.3d 20, 33 (2d Cir. 2019).......................................................... 15

*Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 415–16 (N.D.N.Y. 2019). ............................... 17

*Nokes v. Miami Univ.*, No. 17-CV-482, 2017 WL 3674910 (S.D. Ohio Aug. 25, 2017)............... 8

*Olsson v. Bd. of Higher Educ.,* 49 N.Y.2d 408, 413–14, (1980)................................................... 18

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011)............. 18

*Phillip v. Nat'l Collegiate Athletic Ass'n*, 960 F. Supp. 552, 558 (D. Conn. 1997) ..................... 11

*Prasad v. Cornell Univ.*, No. 15-CV-322, 2016 WL 3212079, at *16 (N.D.N.Y. Feb. 24, 2016)14

*Reuters Ltd v. United Press International, Inc.*, 903 F.2d 904, 909 (2d Cir. 1990) ...................... 7

*Ritter v. Oklahoma*, No. 16-CIV-0438-HE, 2016 WL 2659620, 2016 U.S. Dist. LEXIS 60193

(W.D.Okla. May 6, 2016) ................................................................................... 8, 24

*Ross v. Creighton University*, 957 F.2d 410, 416 (7th Cir. 1992) .................................... 18

*Tedeschi v. Wagner Coll.*, 404 N.E.2d 1302, 1304 (N.Y. 1980) ..................................... 19

*Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881 (App. Div. 1987)............... 18

*Wells v. Xavier Univ.*, 7 F.Supp.3d 746, 751 (S.D. Ohio 2014) .................................... 17

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ......................................... 6

*Wisdom Import Sales Co., LLC v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113-114 (2d Cir.

2003)......................................................................................................... 9

*Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015) ............................... 18

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)..................................... 12, 13, 14

**Statutes**

20 U.S.C. § 1681(a) .................................................................................... 12

**Rules**

Fed. R. Civ. P. 65(a)(1).................................................................................. 8

Fed. R. Civ. P. 65(b) .................................................................................... 9

L. R. Civ. P. 65(b) ...................................................................................... 9

L. R. Civ. P. 7(d)(1) .................................................................................... 9

## **PRELIMINARY STATEMENT**

Plaintiff John Doe (a pseudonym) ("Plaintiff" or "Doe"), a senior at Manhattan College ("Defendant" or the "College"), hereby moves, pursuant to Fed. R. Civ. P. 65, for a temporary restraining order ("TRO") and preliminary injunction ("PI") enjoining Defendant from enforcing Manhattan College's February 14, 2023 final decision expelling Plaintiff from Manhattan College and placing a notation on his transcript, and directing Defendant to immediately restore Plaintiff's access to all courses and academic resources necessary for the completion of his undergraduate studies, and, upon successful completion of his degree requirements, to timely confer Plaintiff's degree.

Plaintiff, a student in good academic standing prior to the issuance of the expulsion decision, was slated to complete his undergraduate coursework in May 2023, upon which Plaintiff would be conferred with his bachelor's degree. Prior to the expulsion decision, Plaintiff had been nominated as a semi-finalist for the Fulbright Scholarship, a coveted scholarship given to seniors in college to pursue post-graduate studies. With 10 scholarships being awarded to those chosen of the 14 semi-finalists, Plaintiff had a high probability of being awarded this scholarship. However, due to the College's actions and expulsion, this award, and Plaintiff's future, is now in jeopardy, as the award is expressly contingent upon being a student in good standing, and successful completion of an undergraduate degree. Plaintiff respectfully makes application for a temporary restraining order and preliminary injunction that will allow him to resume his studies forthwith and to timely complete the requirements for his undergraduate degree, receive his degree, and begin post-graduate studies and employment, while this case is pending.

In his Complaint filed in this Court on March 1, 2023, Plaintiff sets forth in detail how the College engaged in prohibited sex discrimination and violated Plaintiff's contract with Manhattan

College when erroneously finding Plaintiff responsible for sexual misconduct. As shown herein, Plaintiff meets the requirements for a TRO/PI: irreparable injury, a substantial likelihood of success on the merits and/or a sufficiently serious question going to the merits of the action, the balance of hardships tipping decidedly in Plaintiff's favor, and the public interest favors injunctive relief. For the reasons described below, issuance of a TRO/preliminary injunction is warranted.

## STATEMENT OF FACTS

The complete facts underlying this litigation are set forth fully in Plaintiff's Complaint, filed simultaneously with the instant motion and incorporated herein by reference. For the Court's convenience, a summary of the relevant facts follows.

Plaintiff, a male undergraduate student at Manhattan College, slated to graduate in May 2023, was falsely accused by Jane Roe[1], a female Manhattan College student, of violating Manhattan college's Title IX Policy (the Policy"). (Cmpl. ¶¶ 2, 33).

On the night of September 1, 2022/early morning of September 2, 2022, Plaintiff had a consensual sexual encounter with Jane Roe, who Plaintiff had been friends with for nearly two years. The interaction began while at a local bar, where Roe stated that she wanted to have sex with Plaintiff. Plaintiff and Roe went to a Frat House after the bar, where they consensually kissed. Roe then led Plaintiff to her apartment, where they engaged in consensual sexual intercourse. (Cmpl. ¶¶ 38-78).

Following their sexual encounter, while Plaintiff was sleeping, Roe called her friend to ask if she was still at the Frat House. Roe made no mention of sexual assault on this call. Roe returned to the Frat House, where she was not upset, nor did she make any claims of sexual assault.

---

[1] Jane Roe is a pseudonym.

However, Roe, then tried to kiss another female at the Frat House, and became upset after the female rejected Roe's advances. When the female comforted Roe, Roe claimed that she had been sexually assaulted by Plaintiff earlier in the night. On information and belief, Roe only made these claims to gain the female's sympathy. (Cmpl. ¶¶ 79-93).

The following day, Roe made a Title IX complaint against Plaintiff, claiming that she did not consent to the sexual encounter the night prior. Roe did not make any claims of incapacitation. (Cmpl. ¶¶ 94-95). Manhattan College engaged in a Title IX investigation and adjudication which kept Plaintiff in the dark, failing to even notify him of the allegations against him, and sought only to have Plaintiff found responsible as the male accused. (Cmpl. ¶¶ 96-116). During the investigation, Roe's mother retaliated against Plaintiff, distributing cards which stated that "[Plaintiff] is a rapist." However, the College took no action to stop Roe or her mother from making these claims. (Cmpl. ¶¶ 117-136).

The Title IX Hearing was held on December 5, 2022, and was fraught with procedural inadequacies. For example, the Chief Compliance Officer declared loudly, in front of the Hearing Panel, that Public Safety Officers were outside waiting to speak with Plaintiff, thereby prejudicing the Hearing Panel, making it seem as though Plaintiff was going to be arrested and was already guilty. (Cmpl. ¶¶ 137-159).

Worse, when the Hearing Panel finally issued their determination, they found Plaintiff responsible for allegations which were never made, and which Plaintiff was therefore never notified of. Despite Roe claiming that the alleged sexual assault was by force, and never claiming incapacitation by alcohol, the Hearing Panel created new charges and found Plaintiff responsible based on a theory of Roe's incapacitation, and sanctioned Plaintiff to expulsion from the College. (Cmpl. ¶¶ 160-173).

Plaintiff timely appealed the Hearing Panel's determination on December 30, 2022, citing multiple procedural inadequacies throughout the Title IX investigation and hearing. On January 18, 2023, the College issued and initial appeal determination, finding that Plaintiff had stated proper grounds for appeal which could have substantially impacted the outcome of the proceedings. (Cmpl. ¶¶ 174-199). On January 31, 2023, however, the College *overturned* the appeal decision, reopening the appeals process to allow Roe an opportunity to respond to Plaintiff's appeal. Incredibly, on February 14, 2023, the Appeal Panel reversed their initial decision, finding that Plaintiff had not presented any grounds for appeal which could have affected the outcome of the proceedings. (Cmpl. ¶¶ 180-185).

Through this action, Plaintiff seeks, *inter alia*, an order directing Manhattan College to set aside the decision finding him responsible for sexual assault and to have all notations referencing the finding removed from his transcript. Without appropriate redress, the unjustified decision and sanction will cause irreversible damage to Plaintiff's reputation, education, and future career. Moreover, without immediate injunctive relief to preserve the status quo, Plaintiff will be unable to pursue an award of the coveted Fulbright Scholarship, and will be robbed of corresponding graduate school opportunities. *See* Declaration of John Doe ("Doe Decl."), submitted herewith.

## ARGUMENT

### I.    THE REQUESTED TRO AND PI IS PROPER UNDER THE LAW

Plaintiff's motion for a temporary restraining order and preliminary injunction[2] should be granted because, as will be discussed herein, Plaintiff satisfies all relevant elements for obtaining

---

[2] Plaintiff requests that bond for this temporary restraining order be waived. *See Doe v. Rensselaer Polytechnic Inst.,* No. 1:20-CV-1185, 2020 WL 5775193, at *2 (N.D.N.Y. Sept. 28, 2020) ("No giving of security shall be required. Although Rule 65(c) 'seems to require the posting of a bond

a temporary restraining order and preliminary injunction: (1) Plaintiff can demonstrate a likelihood of irreparable injury; (2) there is either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in Plaintiff's favor; (3) the balance of hardships tips in Plaintiff's favor regardless of the likelihood of success; and (4) the "public interest would not be disserved" by granting the injunction. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F. 3d 887, 895 (2d Cir. 2015); *see also Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *General Mills, Inc. v. Chobani, LLC*, 158 F. Supp. 3d 106, 114-115 (N.D.N.Y. 2016).

A preliminary injunction, while considered an extraordinary remedy, should be issued when necessary to preserve the status quo pending the final outcome of a case. *Reuters Ltd v. United Press International, Inc.*, 903 F.2d 904, 909 (2d Cir. 1990). "[T]he court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, *i.e.,* the situation that existed between the parties immediately prior to the events that precipitated the dispute." *Asa v. Pictometry Int'l Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y. 2010). The "'[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche v. Kezer*, 20 F. 3d 68, 74 (2d Cir. 1994) (quoting Black's Law Dictionary). The temporary restraining order and preliminary injunction that Plaintiff seeks here merely *preserves* the status quo of the last peaceable, uncontested status between the parties, i.e.— John Doe's status as an active student enrolled at Manhattan College and completing his Spring 2023 registered courses and graduation/degree requirements.

---

for all TROs, a number of cases have held that the court's discretion to set the amount of the bond includes the discretion to waive the bond entirely.'").

In a number of recent cases, federal courts have granted the kind of injunctive relief sought here, prohibiting schools from implementing discipline against students whose litigation challenges the school's disciplinary proceedings, while such litigation is pending:

- In *Doe v. University of Connecticut*, No. 3:20-cv-00092 (D. Conn. Jan. 23, 2020), the District Court of Connecticut, following Second Circuit law, granted the plaintiff student's motion for preliminary injunction enjoining defendants from enforcing his suspension pending the outcome of the litigation.

- In *Doe v. Middlebury College,* No. 1:15-cv-192-jgm, 2015 WL 5488109, 2015 U.S. Dist. LEXIS 124540 (D.Vt. Sep. 16, 2015), the District Court of Vermont, following Second Circuit law, enjoined the school from expelling the student pending the outcome of plaintiff's contract claims against the school relating to his disciplinary proceedings.

- In *Doe v. Univ. of Notre Dame*, No. 17-CV-298, 2017 WL 1836939, 2017 U.S. Dist. LEXIS 69645 (N.D. Ind. May 8, 2017), the court concluded that a student facing discipline for an allegation of sexual misconduct had demonstrated "at least some likelihood of success on the merits of his breach of contract claim and of irreparable harm." The school was ordered to stay discipline of the student and permit him to sit for final examinations.

- In *Nokes v. Miami Univ.*, No. 17-CV-482, 2017 WL 3674910 (S.D. Ohio Aug. 25, 2017), the court granted a preliminary injunction prohibiting a public university from suspending a student who had alleged that the school had acted in violation of his constitutional due process rights in adjudicating a student conduct matter.

- In *Doe v. Pennsylvania State Univ.*, 276 F. Supp. 3d 300, 302 (M.D. Pa. 2017), the court granted a preliminary injunction to a student who had alleged that a school acted in violation of his due process rights in adjudicating a student conduct matter.

- In *Doe v. University of Cincinnati*, 223 F. Supp.3d 704 (S.D. Ohio 2016), the court granted a preliminary injunction prohibiting a public university from suspending a student who had alleged that the school had acted in violation of his constitutional due process rights in adjudicating a student conduct matter.

- In *Doe v. Brown Univ.,* 210 F. Supp. 3d 310, 313 (D.R.I. 2016), the court concluded that the school breached its contract with a student by the manner in which it conducted his disciplinary hearing on an allegation of sexual misconduct. The school was ordered to vacate its finding and sanction against the student and expunge his record. The court had previously granted the plaintiff's motion for preliminary injunction to preclude enforcement of the disciplinary sanction while the case was pending.

- In *Ritter v. Oklahoma*, No. 16-CIV-0438-HE, 2016 WL 2659620, 2016 U.S. Dist. LEXIS 60193 (W.D.Okla. May 6, 2016), the court granted plaintiff's motion for preliminary injunction, staying the imposition of discipline and permitting plaintiff to complete all remaining graduation requirements.

- In *King v. DePauw Univ.*, No. 2:14-cv-70, 2014 WL 4197507, 2014 U.S. Dist. LEXIS 117075 (S.D. Ind. Aug. 22, 2014), the court found that a student accused of sexual misconduct had demonstrated a likelihood of success on breach of contract claims against the school. The court prohibited the school from enforcing a suspension and ordered that the student be permitted to enroll in and attend the school without restriction.

In *Doe v. Texas Christian Univ.*, No. 4:22-CV-00297-O, 2022 WL 1573074 (N.D. Tex. April 29, 2022), the court granted the plaintiff's motion for preliminary injunction, enjoining the defendant from enforcing the plaintiff's expulsion.

## II.     LEGAL STANDARD

Although a preliminary injunction cannot issue without notice, *see* Fed. R. Civ. P. 65(a)(1), a temporary restraining order may be granted without notice to the adverse party if: (1) it clearly appears from specific facts shown by affidavit or verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party (or that party's attorney) can be heard in opposition; and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.  Fed. R. Civ. P. 65(b); *see also* L. R. Civ. P. 7(d)(1); L. R. Civ. P. 65(b).

## III.    PLAINTIFF WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF AN INJUNCTION

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision in the merits can be rendered." *Doe v. Rensselaer Polytechnic Inst.*, No. 18-CV-1374(FJS)(CFH), 2019 WL 181280, at *2 (N.D.N.Y. Jan. 11, 2019). To make a showing of

irreparable harm, the moving party must establish that he is subject to an imminent harm that cannot be adequately remedied by money damages alone. *See LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 56 (2d Cir. 2004); *Wisdom Import Sales Co., LLC v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113-114 (2d Cir. 2003).

      Plaintiff easily makes such a showing here. At the time of his expulsion, Plaintiff was in the final few months of his final year of college, and, upon successful completion of these last few courses, Plaintiff was on track to graduate and earn his bachelor's degree in May 2023. Further, Plaintiff was in the process of applying to competitive graduate programs and was in contention for the coveted Fulbright Scholarship, which award is *contingent* upon Plaintiff's good standing at the College and successful completion of his degree. Absent injunctive relief, Plaintiff will suffer losses which money damages alone cannot compensate—specifically, if no injunction is issued, even if Plaintiff ultimately succeeds on the merits of his claim—he still would a full year of credits short of graduating, would not earn his bachelor's degree on time, and would forever have to explain to any future employer or graduate program the reason for his failure to complete his degree on time.[3] Moreover, money damages could not compensate for the loss of opportunity in terms of future career success if Plaintiff were to lose the Fulbright Scholarship. Accordingly, without injunctive relief, Plaintiff will be precluded from completing his final coursework, will lose the credits for his Spring 2023 semester, be ineligible to graduate or receive his degree, and be ineligible to begin his post-graduate career and studies.

      For these losses, money damages cannot make Plaintiff whole. *See, e.g., Doe v. Middlebury*, *supra,* 2015 WL 5488109 at *3 ("While Plaintiff may recover money damages to

---

[3] Even if Plaintiff were to transfer to another undergraduate institution, the majority of colleges and universities do not accept senior transfer students, and accordingly, Plaintiff would have to transfer as a junior, and would be two years behind in completing his degree.

compensate for lost wages, money damages cannot compensate for . . . the delay in the completion of his degree, or the opportunity to begin his career in July . . . with this particular employment. Further, Plaintiff would have to explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap."); *Doe v. Univ. Conn.*, *supra*, No. 20-CV-00092, ECF No. 18, at *4 ("For a college student poised to graduate in a few months, it is highly likely that a . . . suspension and a sanction for sexual assault would indeed 'forever change[]' the trajectory of his education and career. . . .  [H]e would need to explain a gap on his résumé in future applications to schools or jobs.  He would also need to explain the . . . notation on his UCONN transcript, and a truthful explanation would seriously hinder his prospects."); *Doe v. Univ. of Notre Dame*, *supra*, 2017 WL 1836939, at *12 ("Even if John prevails in this case and the disciplinary dismissal is set aside by the final relief awarded, in order to earn his degree John would still be required to. . . retake the two courses necessary for his degree. . . .  I am persuaded that this gap constitutes irreparable harm to John's reputation and resumé for purposes of career prospects and possible further academic advancement. The questions the gap raises, and the explanation it requires, are potentially damaging to John in a manner not compensable by money damages and not repaired by permanent injunctive relief that might be granted after a decision on the merits in John's favor."); *King v. DePauw University*, *supra*, 2:14-cv-70 (S.D. Ind. Aug. 22, 2014) ("If King is not permitted to complete this upcoming semester at DePauw—even if, as DePauw asserts, he could choose to attend another university and ultimately graduate on time— he will forever have either a gap or a senior-year transfer on his record. The Court finds it inevitable that he would be asked to explain either situation by future employers or graduate school admissions committees, which would require him to reveal that he was found guilty of sexual misconduct by DePauw. Successfully seeing this lawsuit to its conclusion could not erase the gap

or the transfer; the question will still be raised, and any explanation is unlikely to fully erase the stigma associated with such a finding. Money damages would not provide an adequate remedy at that point; DePauw's disciplinary finding—even if determined to have been arbitrary or made in bad faith—would continue to affect him in a very concrete way, likely for years to come."); *Phillip v. Nat'l Collegiate Athletic Ass'n*, 960 F. Supp. 552, 558 (D. Conn. 1997) (granting preliminary injunction where, "if the motion is denied, [plaintiff]'s education will be interrupted and delayed, perhaps for years"); *Coleman v. Newburgh Enlarged City School Dist.*, 319 F. Supp. 2d 446, 453 (S.D.N.Y. 2004) (continued suspension of student, and accompanying preclusion from extracurricular activities, "would result in imminent and irreparable harm by jeopardizing (a) the quantity and quality of the Plaintiff's education, (b) the Plaintiff's chance to graduate from high school, (c) the Plaintiff's chance for a college scholarship, and (d) the Plaintiff's opportunity to attend college"); *Maczaczyj v. State of N.Y.*, 956 F. Supp. 403, 408 (W.D. N.Y. 1997) (plaintiff showed irreparable harm where, in absence of injunction, he would not be able to participate in his master's program, or any other master's program at the college, which exclusion would most likely affect his ability to engage in future employment of his choice and would have an unquantifiable effect on his mental health).

Accordingly, Plaintiff meets the first element necessary for injunctive relief.

## IV.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS (OR SHOWS SERIOUS MERITS QUESTIONS AND HARDSHIP)

Plaintiff satisfies the second prong for preliminary injunction, which is that he is likely to succeed on the merits of his claims, or at least, that there are sufficiently serious questions going

to the merits of his claims to make them fair ground for litigation and the balance of the relative hardships tips in his favor.[4]

A movant seeking to show a likelihood of success on the merits "need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

1. **Title IX**

Title IX states: "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  "Title IX bars the imposition of university discipline where gender is a motivating factor."  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). The statute is enforceable through an implied private right of action.  *Id.* at 714. Title IX claims relating to university disciplinary proceedings generally fall into in two categories: (1) "erroneous outcome" cases, in which "the claim is that plaintiff was innocent and wrongly found to have committed an offense"; and (2) "selective enforcement" cases, where "the claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the student's gender."  *Id.* at 715.  Plaintiff makes his Title IX claim here based upon an erroneous outcome.

a. **Erroneous Outcome.**

As the Second Circuit has explained,

> Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. . . . [T]he pleading burden in this regard is not heavy. . . . [A] complaint

---

[4] The hardships element will be addressed in Section III.C, *infra*.

> may allege particular evidentiary weaknesses . . . such as a motive
> to lie on the part of a complainant or witnesses, particularized
> strengths of the defense, or . . . particular procedural flaws affecting
> the proof. . . .   A plaintiff must . . . also allege particular
> circumstances suggesting that gender bias was a motivating factor
> behind the erroneous finding. . . .   Such allegations might include,
> inter alia, statements by members of the disciplinary tribunal,
> statements by pertinent university officials, or patterns of decision-
> making that also tend to show the influence of gender.

*Yusuf*, 35 F.3d at 715.  Plaintiff easily meets both prongs of an erroneous outcome claim,

making it more likely than not that he will succeed on the merits, or, at the very least, that there

are sufficiently serious questions to provide a fair ground for litigation.

### i.    Particular Circumstances Exist to Raise Doubt as to the Accuracy of the Proceedings

As courts routinely recognize, "[t]he first element of an erroneous outcome claim—casting

articulable doubt on the accuracy of the outcome—is not a significant barrier."  *Doe v. Marymount

Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018).  Plaintiffs "can satisfy this element in a number

of ways including . . . challenging the overall sufficiency and reliability of the evidence."  *Ibid.*

Here, Plaintiff sets forth a myriad of both procedural and substantive flaws casting doubt

on the accuracy of the College's adjudication finding him responsible for sexual assault. By way

of example, and not limitation: (i) the College failed to provide Plaintiff with proper notification

of the allegations against him, then found Plaintiff responsible for an allegation which Roe never

alleged; (ii) the College failed to notify Plaintiff of his right to an advisor from the outset; (iii) the

College failed to provide Plaintiff with knowledge of the possible sanctions to be imposed; (iv)

the College failed to ask Roe questions which could negatively impact her credibility; (v) the

College allowed the Compliance Officer to prejudice the Hearing Panel and the resulting outcome

of the Hearing by announcing loudly that Public Safety was on site to meet with Plaintiff, thereby

implying Plaintiff's arrest and guilt; (vi) the College failed to provide a thorough Investigation

Report; (vii) the College improperly equated intoxication with incapacitation; (viii) the College improperly reversed its initial appeal decision, and rejected Plaintiff's appeal on reconsideration.

Plaintiff therefore sets forth: (i) "particular procedural flaws," including Manhattan College's failure to properly investigate and its failure to apply the proper policy definitions of consent and incapacitation; and (ii) "particular evidentiary weaknesses," such as Roe's numerous inconsistent statements and claims that were concretely disproved by other evidence/testimony. *See Yusuf.*, 35 F.3d at 715.  *See also Columbia,* 831 F.3d 46 (plaintiff's claims that "[t]he investigator, the panel, and the reviewing Dean . . . reached conclusions that were incorrect and contrary to the weight of the evidence" was sufficient to meet the erroneous outcome standard); *Marymount*, 297 F. Supp. 3d at 584 (allegations of procedural irregularities and "inconsistent and incredible statements" by accuser); *Prasad v. Cornell Univ.,* No. 15-CV-322, 2016 WL 3212079, at *16 (N.D.N.Y. Feb. 24, 2016) ("allegations that the investigators intentionally misconstrued and misrepresented critical exculpatory evidence" sufficient to cast doubt on outcome); *Doe v. Texas Christian Univ*., 2022 WL 1573074, at *8 ("The exclusion of 'compelling exculpatory evidence' from the decisionmakers is evidence of an erroneous decision.").

Collectively, the litany of errors identified in this case sufficiently casts doubt on the accuracy of the outcome of the proceedings.

### ii.   Particular Circumstances Show the Erroneous Outcome was Influenced by Gender Bias

With respect to gender bias, the Second Circuit has made clear that this prong can be met by "specific facts that support a *minimal plausible inference* of [gender] discrimination."  *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016) (emphasis added). "[T]he inference of discriminatory intent supported by the pleaded facts [need not] be *the most plausible* explanation

of the defendant's conduct.  It is sufficient if the inference of discriminatory intent is plausible."

*Id.* at 57.

Indeed, as the Second Circuit emphasized,

> [W]hen combined with clear procedural irregularities in a university's response to allegations of sexual misconduct, even *minimal* evidence of pressure on the university to act based on invidious stereotypes will permit a plausible inference of sex discrimination. . . . [W]here a university (1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, these circumstances provide the requisite support for a *prima facie* case of sex discrimination.

*Menaker v. Hofstra Univ.,* 935 F.3d 20, 33 (2d Cir. 2019).

Plaintiff submits that the facts of this case show a clear influence of gender bias on the outcome of the proceedings and a prima facie case of sex discrimination. First, Plaintiff alleges that Manhattan College received negative media attention for its previous failure to adequately respond to allegations of sexual assault against males. Second, Plaintiff notes that the OCR had launched hundreds of investigations into colleges and universities for alleged failures to adequately respond to female students' complaints of sexual misconduct, putting Manhattan College at risk of such an investigation and at risk of losing federal funds. Third, statements from the College's own administrators made clear that they approach the issue of sexual assault from a trauma-informed lens. Fourth, Plaintiff points to student activism and the continued focus on the College's handling of sexual misconduct complaints, including an article from Roe's friend mere days after the letter finding Plaintiff responsible, prompting the College to overturn Plaintiff's appeal. Fifth, Plaintiff points to blatant disparate treatment of the Plaintiff, the male respondent, versus Roe, the female complainant, whereby Roe was treated as credible from the start and never seriously

14

questioned, despite obvious inconsistencies in her claims, yet Plaintiff was treated as guilty from

the start, despite his consistent accounts of events throughout the investigation and adjudication of

the matter. Sixth, despite the Hearing Panel finding that Plaintiff and Roe were equally intoxicated,

the Hearing Panel only found that Roe was unable to consent due to intoxication.

      Collectively, these facts provide a strong ground for proving gender bias on Plaintiff's Title

IX claim. Indeed, this Court has found that a similarly situated plaintiff student plausibly alleged

gender bias on very similar claims:

> Plaintiff has pointed to flaws in the investigation, assumptions made
> by investigators, and an unwillingness by investigators to consider
> evidence he had presented of his innocence in the attack. He also
> contends that Syracuse did not question Roe's credibility and did not
> require her to explain the circumstances of her identification of
> Plaintiff or her memory of the event at Plaintiff's hearing or in any
> investigation. Plaintiff's allegations could reasonably be read to
> support an understanding that the Investigator, the University
> Conduct Board, the Appeals Board, and other Syracuse officials
> ignored any evidence or contradictions in Roe's story and refused to
> investigate any evidence that supported Plaintiff's version of events.
> . . . [A] reasonable inference could be drawn that the Investigator,
> the University Conduct Board, the Appeals Board, and other
> University officials were motivated to appease OCR by siding with
> Roe.

*Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 415–16 (N.D.N.Y. 2019). *See also, e.g., Columbia*,

831 F.3d at 57 ("[I]t is entirely plausible that the University's decision-makers and its investigator

were motivated to favor the accusing female over the accused male, so as to protect themselves

and the University from accusations that they had failed to protect female students from sexual

assault."); *Collick v. William Paterson Univ.*, 16-471 (KM) (JBC), 2016 WL 6824374 at *16

(D.N.J. Nov. 17, 2016) ("[I]t is no more than a commonsense inference that the public's and the

policymakers' attention to the issue of campus sexual assault may have caused a university to

believe it was in the spotlight" and thus discriminate against the male respondent)*, adhered to on*

*denial of reconsideration,* 2017 WL 1508177 (D.N.J. Apr. 25, 2017)*, aff'd in part, remanded in part,* 699 Fed. Appx. 129 (3d Cir. 2017);  *Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205, 1210–11 (M.D. Fla. 2019) (investigation "amidst a clamor of public and campus scrutiny over its treatment of sexual assault complaints by female students" created "circumstantial evidence of bias"); *Doe v. Amherst Coll.*, 238 F.Supp.3d 195, 223 (D. Mass. 2017) (allegations that university was trying to "appease" a student-led movement resulted in gender bias); *Doe v. Lynn Univ., Inc.*, 235 F.Supp.3d 1336, 1340–42 (S.D. Fla. 2017) (allegations that university was reacting to "pressure from the public and the parents of female students" to punish males); *Wells v. Xavier Univ.*, 7 F.Supp.3d 746, 751 (S.D. Ohio 2014) (allegations suggested that university was "reacting against him[ ] as a male" in response to a Department of Education investigation).

Moreover, "[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side…it is plausible to infer…that the evaluator has been influenced by bias." *Columbia,* 831 F.3d at 57.  As set forth in the Complaint, the majority of the evidence in the case either did not support, or directly cut against, Roe's claims, yet Roe was inexplicably found credible and Plaintiff found responsible.

In light of the above, Plaintiff sufficiently sets forth a likelihood of success on the merits, or at the very least, raises serious questions making the Title IX claim a fair grounds for litigation. As such, Plaintiff has satisfied the second element for injunctive relief under Second Circuit law.

### 2.  **Breach of Contract**

In addition to Plaintiff's Title IX claim, he also presents a likelihood of success on the merits with respect to his contract claims.

New York law recognizes that the relationship between a student and a college is contractual in nature, and that the terms of the Student Handbook become part of that contract.  *See*

*Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881 (App. Div. 1987); *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015).  Indeed, "'there seems to be "no dissent" from the proposition' that the 'catalogues, bulletins, circulars, and regulations of the institution' determine the contractual relationship between the student and the educational institution." *Johnson v. Schmitz*, 119 F. Supp.2d 90, 93 (D. Conn. 2000) (quoting *Ross v. Creighton University*, 957 F.2d 410, 416 (7th Cir. 1992)). In addition, "[i]mplicit in the contract is the requirement that the institution 'act in good faith in its dealing with its students.'" *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (quoting *Olsson v. Bd. of Higher Educ.,* 49 N.Y.2d 408, 413–14, (1980)). A student may plausibly allege a breach of contract claim against his college where the college failed to comply with promises and policies contained in the student handbook. *See Clogher v. New York Med. Coll.*, 976 N.Y.S.2d 198, 199 (App. Div. 2013) (breach of contract claim improvidently dismissed where student alleged that "NYMC failed to comply with its obligation to maintain the plaintiff's academic records, that NYMC was required to provide her with a personally tailored program plan as set forth in the student handbook, and that NYMC failed to follow that plan").

Here, the contractual terms are contained in Manhattan College's Sexual Misconduct Policy (the "Policy"). Plaintiff applied to and enrolled at Manhattan College and paid associated fees and expenses. Plaintiff did so in reliance on the understanding and with the reasonable expectation that Manhattan College would implement and enforce the provisions and policies set forth in its official publications, including the Policy. The contract contained an implied covenant of good faith and fair dealing that required any proceedings to be conducted with basic fairness and that the College would not exercise its discretion arbitrarily or capriciously.

17

While New York courts give deference to school determinations related to academic matters, "suspension or expulsion for causes unrelated to academic achievement, . . . involve determinations quite closely akin to the day-to-day work of the judiciary. Recognizing the present day importance of higher education to many, if not most, employment opportunities, the courts have, therefore, looked more closely at the actions of educational institutions in such matters." *Tedeschi v. Wagner Coll.*, 404 N.E.2d 1302, 1304 (N.Y. 1980) (directing school to comply with stated hearing/review policies).  In addition, although some courts have declined to uphold contract claims against colleges based upon sweeping, generic policy statements, such as a "general statement of adherence by [the school] to existing anti-discrimination laws," *see Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998), courts have not hesitated to uphold contract claims when a student identifies a *specific* policy provision that was violated.  *See Clogher, supra*, 976 N.Y.S.2d 198; *see also Collick v. William Paterson Univ.*, No. 16-471 (KM) (JBC), 2016 WL 6824374, 2016 U.S. Dist. LEXIS 160359, at *69-70 (D.N.J. Nov. 17, 2016) ("the Complaint sufficiently alleges that Defendants did not adhere to [the school's] own rules").

### a. __Manhattan College Breached its Contract with Plaintiff__

In the instant case, Plaintiff identified numerous, specific provisions of Manhattan College's Policy that were violated during the investigation and adjudication of Roe's claims, providing the fertile ground for a breach of contract claim. By way of example, and not limitation, Manhattan College violated the specific provisions of the Policy: (i) failing to provide Plaintiff with a Notice of Allegation; (ii) failing to timely advise Plaintiff with proper information regarding his right to the advisor of his choice; (iii) failing to distinguish between intoxication and incapacitation as set forth in the Policy; (iv) permitting the Compliance Officer to prejudice the Hearing Panel, and refusing to consider this as a bias/conflict of interest that affected the outcome

of the proceeding on appeal; (v) improperly Equating intoxication with incapacitation in violation of the Policy; and (vi) overturning the original appeal decision.

Accordingly, Plaintiff presents a likelihood of success on the merits, or at least, sufficiently serious questions to make the breach of contract claim a fair ground for litigation.

### b.  Manhattan College Breached the Covenant of Good Faith and Fair Dealing

In addition to the specific policy provisions breached by the College, resulting in Plaintiff's improper sanction of expulsion for sexual misconduct, Defendant breached the implied covenant of good faith and fair dealing. In New York, the implied covenant includes a promise not to act arbitrarily or capriciously in exercising its discretion under the policies. *See generally*, *Babiker v. Ross Univ. Sch. of Med.*, 98-CIV-1429 (THK), 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), *aff'd*, 86 Fed. Appx. 457 (2d Cir. 2004).

In the instant case, as demonstrated above, Defendant acted with bias against Plaintiff in the course of the investigation and adjudication of Plaintiff's matter, which is inherently arbitrary. In addition, as described in the Complaint: (i) the Investigators abused their discretion by failing to ask probing questions to witnesses, including Roe, in order to paint a narrative that led Plaintiff to be found responsible; (ii) the Investigators failed to properly inform Plaintiff of all relevant procedural information, such as the role of his advisor; (iii) the College failed to address Roe's retaliatory behavior and witness tampering; (iv) the College permitted the Compliance Officer to prejudice the Hearing Panel; (v) the College failed to properly apply the preponderance of the evidence standard given the lack of evidence in the case and Roe's conflicting statements; (vi) the Hearing Panel abusing its discretion by implementing an unduly harsh sanction that did not

consider the specific facts of the case; and (vii) the Appeal Panel requested supplemental appeals and then reversed their Appeal Determination in a Second Determination in violation of the Policy.

By employing gender bias and acting arbitrarily and capriciously in the investigation and adjudication of Roe's claims against Plaintiff, Manhattan College violated the implied covenant of good faith and fair dealing. As such, Plaintiff sets out a likelihood of success on the merits or substantial questions making the contract claims a fair ground for litigation. The second prong for injunctive relief is satisfied.

## V.   THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFF'S FAVOR

Plaintiff satisfies the third prong for preliminary injunctive relief, which is that the balance of hardships tips decidedly in his favor.

As noted above, without injunctive relief, Plaintiff will be prevented from completing his last year of college, will lose the opportunity to earn his degree and graduate on time, and will lose the opportunity to be awarded the Fulbright Scholarship. Moreover, since it is just weeks away from the end of the Spring semester, it would be impossible for Plaintiff to transfer schools to complete his senior year on time. Moreover, due to the transcript notation and the College's improper finding of sexual assault, it will likewise be virtually impossible for Plaintiff to complete his degree elsewhere while this litigation is pending (and, even if the notation and finding did not prohibit his admission somewhere, the application cycle for most schools for Fall 2023 admission has already passed). In sum, Plaintiff faces a complete derailment of his educational and professional path, which he would then have to disclose and explain to future schools or employers, forever marring his opportunities. Plaintiff thus faces extremely severe hardships if injunctive relief is not granted.

In contrast, an injunction prohibiting Defendant from expelling Plaintiff places no hardship on the College. Throughout the course of the College's investigation of Roe's claims, Plaintiff continued his studies virtually without issue. In fact. Roe does not even attend the College any longer, and Plaintiff can complete his courses entirely online. Accordingly, permitting Plaintiff to continue his courses poses no threat whatsoever to the safety of any Manhattan College student, and there is no chance that Jane Roe would interact with Plaintiff at all. Indeed, granting Plaintiff's motion would simply restore the status quo pro prior to his expulsion; and, while the College would suffer the temporary (and primarily philosophical) interference with its imposition of student discipline, if Defendant ultimately prevails on the merits, it can simply place the notation back on Plaintiff's transcript and revoke/rescind his degree.

Other courts in the Second Circuit have applied this same balancing analysis in granting preliminary injunctive relief to plaintiff students. For example, in *Doe v. Middlebury*, the District of Vermont held:

> [I]t is unlikely Middlebury will suffer great damage or loss as a result of the issuance of a preliminary injunction preventing the expulsion of Plaintiff for the fall semester. Plaintiff was permitted to return to classes on the Middlebury campus . . . following the alleged assault, and remained a student during the investigation throughout the semester. . . .
>
> The Court is aware colleges have a difficult role in dealing with allegations of sexual misconduct. While Middlebury will suffer interference with its process and sanction if the Court grants the motion, if Middlebury prevails on the merits, it can refuse to award, or revoke, Plaintiff's diploma and maintain Plaintiff's disciplinary record in its files. The harm Middlebury will suffer if Plaintiff is allowed to remain a student for the fall semester is not as great as the harm Plaintiff will suffer if he is not permitted to return to campus but ultimately prevails in the case.

*Doe v. Middlebury Coll.*, 2015 WL 5488109, at *4.  The District of Connecticut recently

reached the same conclusion, stating in *Doe v. University of Connecticut*:

> The balance of equities in this case favors a TRO. As discussed
> above, the Plaintiff faces a severe sanction and a cloud over his
> future, and the semester has already begun without him.  If he is not
> permitted to enroll and attend classes while he litigates his claims
> against UCONN, *he will not graduate on time and will have a gap
> on his résumé and transcript to explain to any future schools or
> employers, even if he ultimately prevails in this case*. Money
> damages cannot compensate him for these harms, in part because
> they would be virtually impossible to determine. How does one
> know why one's job or school application is rejected?
>
> While UCONN certainly has an interest in designing and
> implementing its own disciplinary proceedings, the harm a TRO
> would inflict on UCONN is slight. It will suffer no harm if the
> Plaintiff enrolls and begins to take classes this Spring . . . .

*Doe v. University of Connecticut*, No. 3:20-cv-00092, ECF No. 18, at *11 (D. Conn. Jan.

23, 2020).  *See also, Doe v. Univ. of Notre Dame, supra*, 2017 WL 1836939, at *13 (To administer

two exams to John Doe is a modest requirement, it presents no logistical burden to Notre Dame

and is virtually costless to the institution. . . . On the other hand, if John prevails and the discipline

is reversed, to deny the limited relief he seeks now would impose a significant extension of the

hardship he suffers by a wrongful dismissal interrupting his senior year at the 11th hour."); *King v.

DePauw Univ.*, *supra*, 2014 WL 4197507,*14 ("[T]he Court finds that if DePauw ultimately wins

this suit, the harm it will have suffered by King's court-ordered return to campus this fall, while

real, will not be as great as the harm King will have suffered if he is not permitted to return to

campus but ultimately wins. A win by DePauw would vindicate its policies and its process in this

case.  King will still have been found responsible for sexual misconduct by DePauw, as his record

will reflect, and he would have suffered significant consequences, although not the full extent of

the consequences DePauw intended him to suffer. On the other hand, as discussed above, if the

situation is reversed, in the absence of a preliminary injunction King will continue to suffer real, unavoidable consequences even if he wins this suit. Accordingly, the Court finds that the balance of equities is firmly in King's favor.").

Accordingly, the balance of the hardships tips decidedly in Plaintiff's favor, satisfying the third element for injunctive relief.

## VI.   THE REQUESTED INJUNCTION IS IN THE PUBLIC INTEREST.

Plaintiff satisfies the fourth prong for a preliminary injunction, which is that the requested injunction is in the public interest.

There is a strong public interest in avoiding violations of civil rights. *See Floyd v. City of New York*, 959 F. Supp. 2d 668, 673 (S.D.N.Y. 2013).  Likewise, "[t]he public has an interest in fundamentally fair and sound educational discipline that is not imposed arbitrarily or capriciously." *Doe v. Univ. of Notre Dame*, *supra*, 2017 WL 1836939, at *13. *See also Ritter v. State of Oklahoma, supra*, 2016 WL 2659620, at *3 ("[I]t is always in the public's interest that a student be treated fairly before being disciplined.").

"While there is also a public interest in enforcement of university disciplinary policies, allowing the Plaintiff to enroll in school while the Court adjudicates his motion for a preliminary injunction does not unreasonably interfere with that interest." *Doe v. Univ. Conn.*, *supra*, No. 3:20-cv-00092, ECF No. 18, at *12.  *See also Middlebury Coll.*, *supra*, 2015 WL 5488109, at *4 (finding public interest did not weigh against Plaintiff where he posed no danger to campus and there was no potential for him to interact with Roe if readmitted).

Thus, the public interest weighs in favor of granting Plaintiff injunctive relief, satisfying the fourth and final element for such relief under Second Circuit law.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant a temporary restraining order and preliminary injunction restraining Defendant from expelling Plaintiff from Manhattan College pending the adjudication of the merits of the Complaint.

Dated:   New York, New York
         March 1, 2023

Respectfully submitted,

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff John Doe*

By: <u>/s/ Andrew T. Miltenberg</u>
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Kristen Mohr, Esq.
Helen Setton, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
sbernstein@nmllplaw.com
amiltenberg@nmllplaw.com
kmohr@nmllplaw.com
hsetton@nmllplaw.com