


Case 1:23-cv-01791-PAE   Document 5-7   Filed 03/01/23   Page 1 of 8



# Written Determination of Appeal

Appeal Panel:

    Marilyn S. Carter, Director, Commuter Services and Outreach

    Matthew Raidbard, Associate Athletic Director-Compliance & Student-Athlete Development

    Grishma Shah, Director of Global Business Studies & Professor of Management

Date: February 14th, 2023

Appeal filed by: Respondent

Summary of the Process:

    IN THIS SECTION, PLEASE SUMMARIZE THE FACTS, HEARING PROCESS, AND THE HEARING PANEL DECISION

This letter serves as determination and rationale for the appeal. On September 4, 2022, Manhattan College("College") received a formal complaint against ▇▇▇▇▇ ("Respondent") alleging Title IX/Sexual Misconduct Violation of ▇▇▇▇▇ ("Complainant") on September 2, 2022 at off Campus at 3824 Waldo Avenue. A formal hearing ("Hearing") was held on December 5th, 2022 where the Hearing Panel ("Panel") found the Respondent Responsible for violating the College's Title IX /Sexual Misconduct (Sexual assault, which is any non-consensual, intentional physical contact of a sexual nature). The sanction: Expulsion from Manhattan College

Per policy, either party has the right to appeal the decision. There are four (4) grounds for appeal: (1) a party believes a procedural error substantially impacted the original finding or sanction; (2) a party has substantial new evidence, (3) a party feels that the sanction is substantially outside the scope or guidelines set by the Manhattan College Community Standards and Student and Faculty Code of Conduct or (4) a party believes that any member of the Title IX process (the Title IX Officer, investigators, hearing officer, and/or decision makers) had a conflict of interest or bias that impacted the outcome of the hearing.

**APPEAL REVIEW:**

**I. THE HEARING PANEL WAS INCONSISTENT WITH THE ESTABLISHED PROCEDURES OF MANHATTAN COLLEGE IN THAT:**



A. Title IX Coordinator's Failed to Provide Respondent Proper Notice of the Time, Location and Factual Allegations of the Alleged Offense, in Direct Violation of the Policy

**Summary**

Title IX Officer failed to provide Respondent with a Notice of Investigation as mandated by the policy. On 9/12/22, at 3:00pm, Respondent received a letter from Chief Compliance Officer of the Office of College Compliance and Ethics Goldie Adele (hereinafter Mr. Adele) stating "At this time, you are being interviewed regarding an alleged violation of our Title IX Policy... It is the College's understanding that the alleged incident of Sexual Assault occurred on 9/2/22." Mr. Adele failed to include the time, location or factual allegations underlying the complaint, a direct violation of the Policy. It was not until October 27, 2022 that Respondent received a copy of the Complaint that contained the time, location and specific allegation(s) of misconduct. This failure to provide the necessary information to the Respondent was in complete contradiction to the Title IX procedural policy and put Respondent in an utter disadvantage when being interviewed by investigators and in the entire Hearing process. Such prejudice to the Respondent is equivalent to a "trial by ambush" and goes against anything remotely equivalent to due process.

**Appeal Panel Review & Decision**

Upon reviewing that Title IX Policy and procedures, the Appeal Panel concurs there is no grounds for appeal. The Respondent ultimately via other communication had the needed information in a timely manner. The Appeal Panel concludes that this matter would not have substantially impacted the outcome of the hearing panel.

**B. Title IX Coordinators Failure to Appropriately Deal with Acts of Retaliation on the Part of the Complainant Created an Unfair Process, to the Detriment of Respondent.**

**Summary**

On 9/23/22, Respondent informed Mr. Adele via email of acts of retaliation on the part of the Complainant/Complainant's mother that went ignored. Such acts included Complainant's mother coming on campus, approaching individuals and asking if they were Manhattan College students and when they said they were, handing them cards stating ▓▓▓▓▓▓▓▓ is a Rapist." Respondent emails were unanswered. Weeks later, Respondent and his advisor met with Mr. Adele via Zoom. Mr. Adele stated to both Respondent and his advisor that since the cards were left "off campus" there was nothing that could be done about the issue. Further, prior to the hearing, Respondent and his advisor informed both Mr. Adele and Ms. Pichardo that at least one witness had been intimidated by the Complainant in an effort to prevent her from coming forward as a potential witness in the hearing process. The concerns included statements by the potential witness expressing fear of speaking out against the Complainant and that Complainant had discovered that the witness had spoken to Respondent regarding the



allegations and witness was truly scared. Witness even expressed her willingness to help the Respondent with what she knew but only "after she graduated from the school." While the Policy states: "The College will make all reasonable efforts to ensure that future harassment, discrimination, and misconduct does not occur and that the parties and those who participated in the investigation and hearing process do not experience any form of retaliation," nothing was done by the College to ensure that the Policy was implemented.

**Appeal Panel Review and Decision**
Upon reviewing the claim that defamatory cards were being circulated about the Respondent, the Appeal Panel agrees that the matter should have been dealt with in a timely manner, but concludes that this matter would not have substantially impacted the outcome of the hearing panel. Consequently, there are no grounds for an appeal.

**C. Title IX Coordinator's Actions at the End of the Hearing Proceedings Prejudiced the Hearing Panel's Decision-Making Process.**

On December 5, 2022, immediately after completion of the hearing conducted at Manhattan College, Respondent and his advisor remained seated at a table inside of Kelly Commons, Room 3B. The hearing panel, consisting of three individuals, also remained seated at the same table approximately 5 feet away. At that time Mr. Adele approached Respondent and his advisor in full view of the hearing panel and stated aloud that Respondent was requested to be seen by the Public Safety Officers. When Respondent's advisor asked what it was about, Mr. Adele stated "About this" and pointed his hands around the room, referring to the Hearing that had just occurred. Mr. Adele then again stated that Public Safety Officers were requesting to meet with ▮▮▮▮▮▮▮. Mr. Adele made said statements within 5 feet of the hearing panel and loud enough for anybody in the room to hear. The advisor then asked Mr. Adele to step out of the room. The Respondent, who became visibly upset by Mr. Adele's statements inside the hearing room, exited the room along with Mr. Adele and the advisor. It should be noted that it was clear to both the Respondent and his advisor that Mr. Adele's announcement in the room meant that Safety officer's were either seeking to question Respondent or arrest him for the allegations referred to in the hearing. After stepping out of the room, the advisor then asked Mr. Adele in a side office directly adjacent to the hearing room why he did not ask to speak to the Respondent and his advisor outside the presence of the hearing panel to avoid risking the fairness of the hearing that had just transpired. Mr. Adele had no response. Instead, Mr. Adele proceeded to make a phone call to the public safety officer and appeared to walk in and out of Room 3B, the same room where the hearing panel remained seated while he made said phone call. The actions on the part of Mr. Adele in earshot of the hearing panel followed by the actions of security personnel so grossly prejudiced the Panel as to create potential and/or actual bias on the part of not only Mr. Adele in his handling of the matter, but on the part of the Panel. Even if one were to argue that the Hearing Panel heard the conversation with Mr. Adele but did not know its meaning, or the panel did not hear the conversation at all, it was clear to anybody in the



hearing room that something serious was about to happen regarding Respondent. Any individual in Mr. Adele's position, whose number one priority is supposed to be preserving the fairness of the hearing before him, would have realized such actions would have a serious impact on the panel's decision. Therefore, it raises serious questions as to Mr. Adele's bias either purposely or, at the very least, without regard to the welfare of the Respondent and the fairness of the process, in creating the above chaotic scenario in order to open the door to a negative outcome for the Respondent.

**Appeal Panel Review and Decision**
The Appeal Panel concurs that Mr. Adele should not have behaved in the manner he did immediately after the hearing was completed. As the person in charge, Mr. Adele should have asked the Respondent and his/her advisor to step out into the hallway and /or find a room for a private discussion. The Appeal Panel concurs there is grounds for an Appeal as this matter could have substantially impacted the outcome of the hearing panel.

**D. Manhattan College Failed to Provide Respondent with an Opportunity to Submit an Impact Statement for the Hearing Officer(s)' Consideration Regarding Sanctions.**

**Summary**
Manhattan College Title IX Policy states: "After the hearing, but before the hearing officer delivers his/her written determination of responsibility and sanction, if any, the parties will have the opportunity to submit an impact statement for the hearing officer's consideration with regard to sanction." The Policy intentionally includes such language to ensure both sides, not just the Complainant, have an ample opportunity to be heard by the hearing panel separate and apart from the responsibility determination. At the end of the hearing, as noted in the audio, the only information provided to Respondent by Title IX Officer Erika Pichardo was that both parties will be informed of the outcome of the hearing without any comments or request for an impact statement. Likewise, following the hearing, Title IX Coordinators failed to reach out to Respondent to provide any opportunity to submit an impact statement. Instead, the Hearing Panel appears to base sanctions solely on the statements provided by the Complainant without any consideration for the Respondent. As such, the actions of Title IX in failing to provide such an opportunity and the failure of the Hearing Panel to follow the instructions of the Policy in reviewing an impact statement are inconsistent with established procedures of the School. To now offer such an opportunity to the Respondent in the aftermath of an expulsion sanction is so prejudicial to the Respondent, particularly as it is impossible at this stage for the Hearing Panel to now "unring a bell" as the decision is now set in the Panel's minds.

**Appeal Panel Review and Decision**
The Appeal Panel agrees that the Respondent should have been invited to submit an impact statement prior to the hearing panel decision and not after the responsibility and sanction were determined. The Appeal Panel concurs there are grounds for an appeal. The Appeal Panel concludes that this matter would have substantially impacted the



outcome of the hearing panel decision in terms of the sanction issued.

E. The Hearing Panel's Consideration of Highly Prejudicial Statements by the Complainant Provided an Unfair Process for the Respondent. The Hearing Panel considered, as part of its evidence, inflammatory statements made by the Complainant in her written statements regarding the unfairness of men getting away with behaviors, by stating "The fact that he will most likely get away with this because he is a man is heartbreaking to me and I do not know how I'm going to recover." Such statements had no relevance to the proceedings and were highly prejudicial to a fair and impartial evaluation of the evidence. The issues regarding these statements were raised to the Title IX panel prior to the hearing and were ignored.

**Appeal Panel Review and Decision**
Upon reviewing the statements highlighted by the Respondent, the Appeal Panel believes that the statements did not impact the fairness of the hearing panel and does not find grounds for an Appeal. The Appeal Panel concludes that this matter would not have substantially impacted the outcome of the hearing panel.

**F. The Hearing Panel's Rationale for a Finding of Responsibility Was not Based on the Policy's Definition of Intoxication and Incapacitation.**

**Summary**

Under the Manhattan College Title IX Hearing Policy, "depending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may be incapacitated and therefore unable to consent. Evaluating incapacitation requires an assessment of an individual's: Decision-making ability, Awareness of consequences, Ability to make informed judgments, Capacity to appreciate the nature and the quality of the act; and Level of consciousness." The Policy goes on to state that "(a)n individual who engages in sexual activity with someone the individual knows or reasonably should know is incapable of making a knowing, reasonable decision about whether to engage in sexual activity is in violation of this Policy." The Hearing Panel, in their decision, mistakenly and improperly equate intoxication with incapacity and fail to conduct the requisite analysis required in the Policy's guidelines to come to their findings of responsibility.she asked the Respondent to engage in oral sex). The Panel, in continuing to confuse intoxication with incapacitation, attempts to find corroboration for the complainant's "intoxication" in their decision by mistakenly stating that "the respondent and both witnesses agreed that the complainant was intoxicated."

**Appeal Panel Review and Decision**
The Appeal Panel did not find distinction between intoxication and incapacitation and does not find this argument as grounds for an Appeal. The Appeal Panel concludes that



this matter would not have substantially impacted the outcome of the hearing panel.

**Summary**
G. Any Allegations of Misconduct on the Part of Respondent Occurred Off-Campus. Manhattan College Title IX Policy states: " This policy applies to conduct occurring on campus, during any College program or activity on or off-campus, including academic programs, admissions, athletics, recruitment, financial aid, housing, employment, as well as certain off-campus conduct perpetrated or suffered by a Manhattan College student, employee, staff member, or third party member of the College community." However, the Policy fails to clarify what "certain off-campus conduct" means, leaving one to guess as to what such conduct is referring to. As the allegations refer to conduct off-campus and does not relate to a College program or activity, it does not fall within the purview of Title IX.

**Appeal Panel Review and Decision**
Upon reviewing the statements highlighted by the Respondent, the Appeal Panel does not agree that the allegations refer to conduct occurring off-campus. The Appeal Panel believes the location of the conduct falls within the purview of Title IX and therefore this is not grounds for an Appeal. The Appeal Panel concludes that this matter would not have substantially impacted the outcome of the hearing panel.

**II. MANHATTAN COLLEGE'S FAILURE TO ALLOW AN APPEAL BASED ON THE DECISION BEING AGAINST THE WEIGHT OF THE EVIDENCE IS IMPROPER.**

**Summary**
Manhattan College's Title IX policy improperly fails to include, as grounds for
appeal, that the decision by the Hearing Panel was against the weight of the evidence,
in complete opposition to due process.

**Appeal Panel Review and Decision**
This is not grounds for an Appeal as it is about a policy change/issue and not the charge in question. The Appeal Panel concludes that this matter would not have substantially impacted the outcome of the hearing panel.

**III. THE SANCTIONS IMPOSED ARE EXCESSIVE IN LIGHT OF THE NATURE OF THE OFFENSE**

**Summary**

The Hearing Panel, as stated above, failed to review or consider any impact on the part of the Respondent as is mandated by the Policy guidelines. Thus, their determination of sanctions, which is based only on the impact on the Complainant, is improper. Further, while the Complainant alleged forcible sexual assault, the Hearing Panel instead found



that the alleged misconduct was not forcible but instead based on a lack of affirmative consent due to alcohol use. While the Respondent disagrees with the finding, the delineation is particularly relevant when it comes to a determination of sanctions. Respondent outlines his academic and extracurricular activities to highlight his accomplishments as an excellent student and how all of it would be jeopardized with the current sanction (being too harsh).

**Appeal Panel Review and Decision**
Upon reviewing the statements highlighted by the Respondent, the Appeal Panel concludes that the Hearing Panel's decision of "responsible" may not have been substantially impacted. Therefore, the sanction would also not have been impacted.
The Appeal Panel concludes that this matter would not have substantially impacted the outcome of the hearing panel and that there are no grounds for an Appeal.

**SUMMARY:**

All appellate decisions are final.

Based on our review of the information submitted earlier to the Appeal Panel, we find that the Respondent does have grounds for appeal based on 1C and 1D.

1C: Mr. Adele remained in the room and behaved in a manner that he should not have prior to the panel's dismissal  and 1D: The Respondent did not have a chance to submit an impact statement in a timely manner. The Appeal Panel concludes that these were procedural errors, however, these errors would not have altered the outcome of the hearing panel nor changed the panel's sanction. The Appeal Panel believes that the procedural errors did not have any impact on the facts presented in the case, and therefore, although the Respondent has grounds for Appeal, the Appeal Panel does not believe that this would have changed or altered the outcome of the hearing panel both in terms of responsibility and sanction. In conclusion, the responsibility and sanction remain unchanged.

Sincerely,

    Marilyn S. Carter, Director, Commuter Services and Outreach

    Matthew Raidbard, Associate Athletic Director-Compliance & Student-Athlete Development

    Grishma Shah, Director of Global Business Studies & Professor of Management

Cc:

Complainant: ███████



Complainant's Advisor: Attorney Mona Jha

Respondent: █████████

Respondent's Advisor: Attorney Julie Rendelman

Title IX Officer, Erika Pichardo